UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA (UE) AMALGAMATED LOCAL 259, Stephen J. Sutton, Frank F. Parker and C. Herbert Salter,

v.

WORTHINGTON CORPORATION, HOLYOKE WORKS.

Civ. A. No. 55–337.

United States District Court
D. Massachusetts.

Dec. 7, 1955.

Allan R. Rosenberg, Boston, Mass., for plaintiff.

Francis J. Vass, A. Lane McGovern, Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., for defendant.

FORD, District Judge.

This is an action by a labor union, its president, acting on behalf of the members of the union, and two individual union members, Parker and Salter, acting on their own behalf. Plaintiffs ask for specific enforcement of an award of a board of arbitration, a declaration of the rights of the parties, and an award of monetary damages.

Defendant is a corporation engaged in interstate commerce, having a place of business in Holyoke, Massachusetts. Plaintiff union is the bargaining representative of the workers at the Holyoke plant, and has entered into a collective bargaining agreement with defendant. Parker and Salter are members of the union and on April 9, 1954 were employees of defendant at the Holyoke plant. It appears from stories published in a Holyoke newspaper that on or about that date Parker and Salter were accused of being Communists at a hearing held in Albany by a subcommittee of the House Un-American Activities Committee, that Salter invoked the Fifth Amendment when called before the subcommittee to answer questions relating to his alleged membership in the Communist Party and to Communist influence in the union, and that Parker chose not to testify before the committee.

On April 15, 1954 defendant discharged Salter and notified Parker that he would be discharged on June 1, 1954. The reason assigned for the discharge in each case was "harmful publicity affecting the Company and the tension and unrest created among the employees in connection with your appearance before the House Un-American Activities Committee at Albany on April 9th." It was indicated that the company might reconsider its action if the employees in question asked to be heard again by the subcommittee in order to clear their records.

On April 27, 1954 the union filed a grievance based on these discharges, and when the parties failed to settle the dispute under the grievance procedure provided in the collective bargaining contract, it submitted the matter to arbitration under paragraph 40 of the contract. The board of arbitration overruled the contention of defendant that the dispute was not arbitrable, and after hearing rendered an award requiring defendant to reinstate Salter and Parker with back pay from the date of discharge. A copy of the majority opinion of the board is attached to the complaint. Defendant has refused to comply with this award.

Defendant now moves for summary judgment dismissing the present action for lack of jurisdiction. The parties have submitted affidavits as to the facts, including excerpts from the transcript of the hearing before the board of arbitrators.

Plaintiffs contend that this court has jurisdiction under the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, and under 9 U.S.C.A. § 9. Defendant contends that neither the board of arbitrators nor this court has jurisdiction over this dispute since it involves a charge of an unfair labor practice over which the National Labor Relations Board has exclusive jurisdiction.

Ordinarily a breach of a collective bargaining contract is not an unfair labor practice, and the remedy for such a breach is to be sought from the courts or from arbitration tribunals agreed upon by the parties rather than

from the National Labor Relations Board. Timken Roller Bearing Co. v. N. L. R. B., 6 Cir., 161 F.2d 949. However, where an unfair labor practice is charged, the Board is given exclusive jurisdiction by the Act. 29 U.S.C.A. § 160(a) provides: "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise". This has been interpreted to exclude the litigation of unfair labor practice charges in the courts, Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 481, 75 S.Ct. 480; Garner v. Teamsters, etc., Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183, 190. Similarly, the Board's exclusive jurisdiction cannot be displaced by proceedings before a privately constituted arbitration board, N. L. R. B. v. International Union, 7 Cir., 194 F.2d 698, 702; N. L. R. B. v. Walt Disney Productions, 9 Cir., 146 F.2d 44, 48. This is true even when the same act which is alleged to be an unfair labor practice is also alleged to be a violation of a provision of the contract. Otherwise the parties by writing into their agreement a ban upon the unfair practices enumerated in § 158, together with a provision for arbitration of all disputes involving alleged breaches of the contract could deprive the Board of all jurisdiction over unfair labor practice charges during the term of the contract. This would clearly violate § 160(a).

■ The question here, therefore, is whether the matter submitted to the arbitration involved a charge of an unfair labor practice, or was merely a simple question of breach of contract. The union's statement of its grievance, made on April 27, 1954, in initiating these proceedings, reads as follows:

"The Company has unfairly and in violation of the contract between this Union and Worthington Corp.

introduced arbitrary new conditions for continued employment of its workers. Under the new working conditions introduced unilaterally by Company and not negotiated with Union, C. Herbert Salter has been suspended and Frank Parker has been put on verbal notice of suspension. The Union asks the Salter's suspension be lifted and that he be paid of all time lost at his average pay as a result of the Company's action and the Frank Parker's notice of suspension be recinded." [Sic]

A fair interpretation of this document is that the gravamen of the union's complaint is the introduction of new working conditions without negotiation with the union. This would be in effect a refusal to bargain as to working conditions, an unfair labor practice under 29 U.S.C.A. § 158(a) (5). The protest against the suspension of Parker and Salter is based solely on the ground that the suspension is the result of new working conditions introduced unilaterally by the company and not resulting from collective bargaining negotiations.

If there is any doubt as to just what the union meant in its original statement of its grievance, it is cleared up by an examination of the union's arguments set forth in its brief filed in the arbitration proceedings. Its principal contention on the merits is that the company's statements in connection with its notices of April 15 to Parker and Salter amount to the imposition of new conditions of employment without negotiation with the union. It is true that the union argues that this is a violation of the recognition clause of the collective bargaining contract. As has been pointed out above, enforcement of the duty of bargaining cannot be removed from the exclusive jurisdiction of the Board by writing into the agreement of the parties a contractual obligation to bargain. Moreover, the union, in arguing that the company has violated its duty to bargain, relies upon decisions of the courts or of the Board dealing solely with the

statutory duty to bargain, and seems to proceed without further reference to the contractual duty on the assumption that its scope is the same as that of the statutory duty.

It is true that other issues were also raised in the arbitration proceedings, such as the question of whether, as defendant contended, the discharges were proper under the provision of the collective bargaining contract reserving to the employer the right to "discharge for proper cause." Had the union relied solely on the contention that the correct interpretation of this provision of the contract did not authorize the suspension or discharge of Salter and Parker for the reasons relied on by the defendant, and nothing was said about refusal to bargain, even though facts existed which might support such a charge, a proper case might have been made for submission to arbitration. Textile Workers Union of America, C. I. O. v. Arista Mills Co., 4 Cir., 193 F.2d 529, 533, 534. That is not, however, the present case. Here the union has chosen to make the alleged refusal to bargain an essential element of its argument that the suspension and discharge of Parker and Salter was improper. This makes the matter one exclusively for the National Labor Relations Board and not within the jurisdiction of the board of arbitration or of this court.

It is not necessary of course to find that the charge of refusal to bargain would ultimately be sustained. On the facts here there is reasonable ground on which the union could argue that the company had unilaterally adopted a policy applicable to the discharge of employees in the position of the two involved here, and that this constituted a condition of employment as to which the company was under a duty to bargain. Cf. Inland Steel Co. v. N. L. R. B., 7 Cir., 170 F.2d 247, 253, 12 A.L.R.2d 240. The determination of the validity of such a contention was a matter reserved in the first instance exclusively for the Board. Weber v. Anheuser-Busch, Inc., supra,

348 U.S. at page 481, 75 S.Ct. at page 488.

In view of the disposition on the motion for summary judgment, it is unnecessary to pass on defendant's motions to strike various portions of the complaint.

Defendant's motion for summary judgment is allowed and the complaint is dismissed.